Submitted on the record June 15, ballot title referred to the Attorney General for modification December 21, motions to dismiss ballot title review as moot and to withdraw opinion filed December 21, 2006, granted in part and denied in part by opinion February 15, 2007
See 342 Or 376, 153 P3d 109 (2007)

Chip TERHUNE
and Larry Wolf,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(S53487)

149 P3d 1139

Margaret S. Olney, Smith, Diamond & Olney, Portland, filed the petition and reply for petitioners.

Judy C. Lucas, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.*

DURHAM, J.

---

* Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Walters, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

Petitioner seeks review of the ballot title for a proposed initiative measure. ORS 250.085(2).[1] The Secretary of State has denominated the proposed measure as Initiative Petition 12 (2008). The proposed measure, if enacted, would prohibit individuals, companies, and organizations from using money deducted from an employee's paycheck for a political purpose, as defined in the measure, unless the employee annually consents in writing to such use. The proposed measure contains special definitions of certain terms in the measure, requires entities that use "the payroll deduction process" to segregate those funds from other money, and prescribes penalties if a person, company, or organization that collects or receives payroll-deducted money uses that money for a political purpose without the employee's authorization.

■ The Attorney General certified the following ballot title for Initiative Petition 12 (2008):

"RESTRICTS USE OF PAYROLL DEDUCTIONS FOR 'POLITICAL PURPOSE' (DEFINED); REQUIRES SEGREGATING SUCH MONEY; MANDATES PENALTIES

"RESULT OF 'YES' VOTE: 'Yes' vote prohibits recipient's use of payroll deduction money for 'political purpose' (defined), without specified employee authorization; requires separate account for that money; mandates penalties.

"RESULT OF 'NO' VOTE: 'No' vote retains current law not restricting recipient's use of authorized payroll deduction money, not requiring separate account for funds used for a 'political purpose.'

"SUMMARY: Current law does not prohibit using payroll deduction for political purposes or require keeping that money separate. Measure prohibits person, company, organization from using any payroll-deduction money for

---

[1] ORS 250.085(2) provides:

"Any elector dissatisfied with a ballot title for an initiated or referred measure certified by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. The petition shall state the reasons that the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035."

'political purpose' (as defined), without annual authorization from employee, on specified form. 'Political purpose' includes: candidate, political committee, political party, supporting or opposing candidate or ballot measure, including efforts to gather or to discourage signatures for proposed measure or petition; excludes most lobbying. 'Money' includes in-kind contributions, independent expenditures, pass-through contributions. Requires recipient of payroll-deduction money to segregate political funds in account separate from other funds. Requires penalty against recipient, double refund to employee by recipient using payroll deduction for political purpose without required authorization. Authorizes sanctions for violating commingling prohibition. Other provisions."

Petitioners are electors who timely submitted written comments to the Secretary of State on the Attorney General's draft ballot title. ORS 250.067(1). Petitioners are therefore entitled to seek review of the Attorney General's ballot title. ORS 250.085(2). We review the ballot title to determine whether it substantially complies with ORS 250.035(2).

A ballot title must contain a "caption of not more than 15 words that reasonably identifies the subject matter of the state measure." ORS 250.035(2)(a). Petitioners assert that the caption in this ballot title fails to comply with that standard because it does not identify the entities affected by the measure and, thus, renders the caption ambiguous.

We agree with petitioners that the caption does not correctly identify the subject matter of the proposed measure. In *Nesbitt v. Myers*, 335 Or 219, 64 P3d 1133 (2003) (*Nesbitt I*), this court considered a ballot title almost identical to the ballot title at issue here. In that case, the caption stated:

"AMENDS CONSTITUTION: PROHIBITS COLLECTING AND USING PAYROLL DEDUCTIONS FOR 'POLITICAL PURPOSES' (DEFINED) WITHOUT EMPLOYEE'S WRITTEN, ANNUAL AUTHORIZATION"

*Id.* at 223. We rejected that caption, stating:

"We agree with petitioners that the caption as written obscures the subject matter of the proposed measure. Although it is inescapable that the process toward which

the proposed measure is aimed must begin with an authorized payroll deduction, it is equally inescapable that the proposed measure would do nothing to the collection process. Instead, the proposed measure focuses wholly on what organizations that receive money through payroll deductions may do with that money. That focus is the 'subject' of the proposed measure, and the caption needs to say so."

*Id.* at 224.

In this case, the caption suffers from the same defect that this court identified in *Nesbitt I*. The Attorney General's wording here, like the wording of the ballot title caption in that case, fails to disclose that the focus of the measure's restrictions and penalties is on the individuals and organizations that collect or receive the money from payroll deductions. It is those entities that the measure restricts from using payroll deductions for political purposes. It is difficult, if not impossible, to understand the subject matter of the measure without a disclosure that the measure will restrict the operations of those individuals and organizations. We hold, therefore, that the caption does not substantially comply with ORS 250.035(2)(a) in that it does not identify the subject matter of the proposed measure.[2]

■ Petitioners assert that the Attorney General's "yes" vote result statement fails to identify whom the proposed restriction governs and that the word "recipient" does not solve that deficiency. Petitioners also request that, if the court requires modification, the Attorney General should include the additional detail that the proposed measure requires the "employee's written, annual authorization," rather than a "specified employee authorization."

---

[2] Petitioners' proposed caption states:

"RESTRICTS HOW INDIVIDUALS AND ORGANIZATIONS MAY COLLECT, USE AND MANAGE PAYROLL-DEDUCTED FUNDS; MANDATES PENALTIES"

That caption is not beyond criticism; the term "manage" may describe too broadly the requirements in the proposed measure concerning segregated accounts and the prohibition on commingling. However, that caption does describe accurately the principal focus of the subject matter of the proposed measure. The Attorney General, of course, is under no legal obligation to adopt words or phrases proposed by a ballot title challenger.

■      A ballot title must contain a "yes" vote result statement that is a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." ORS 250.035(2)(b). The use of unfamiliar or technical terms can cause a "yes" vote result statement to run afoul of the statutory requirement that it be a "simple and understandable" description of the result of approval of the proposed measure. In considering whether a term, such as "recipient," violates that standard, we must consider the entire context of its use, including its common definition and its proximity to other terms that may clarify its intended meaning. In applying the statutory standard, we acknowledge that no bright line separates a simple and understandable "yes" vote result statement from one that is not.

"Recipient" has a brief definition: "one that receives: RECEIVER * * *." *Webster's Third New Int'l Dictionary* 1895 (unabridged ed 2002). Although "recipient" is a word of common technical usage among lawyers, its use by laymen in ordinary discourse is, in our view, not common. That fact raises a concern about whether the use of that term undermines the reader's understanding of the result statement.

"Recipient" does not appear in the text of the proposed measure. The proposed measure instead uses the terms "person, company, or organization" to describe the entities that collect or receive money deducted from an employee's paycheck. However, the proposed measure also refers to other entities—"a candidate or political committee or party"—whose receipt of money deducted from an employee's paycheck will result in the categorization of the contributed money as "used for a political purpose" under the proposed measure.

Both groups described above are "recipients" of money deducted from employee paychecks within the contemplation of the proposed measure. But the regulatory focus of the proposed measure is on the conduct of the first group of those recipients—a "person, company, or organization"—in collecting, receiving, and using money from an employee's paycheck without first obtaining the employee's annual,

written authorization. That is the group to which the proposed measure's penalties apply. By contrast, the proposed measure does not regulate the use of payroll-deducted money by the second group of recipients described above, that is, "a candidate or political committee or party." The unmodified term "recipient" in the Attorney General's "yes" vote result statement causes confusion in this context, because it wrongly suggests that the prohibition on "use of payroll deduction money" would apply to both groups of recipients. That inaccuracy indicates that the Attorney General's "yes" vote result statement fails to describe the proposed measure in terms that are "simple and understandable" under ORS 250.035(2)(b).

The Attorney General argues that this court rejected a similar argument in approving a modified "yes" vote result statement in *Nesbitt v. Myers*, 335 Or 424, 429, 71 P3d 530 (2003) (*Nesbitt II*). We disagree, because that case is distinguishable.

The dispute addressed in *Nesbitt II* concerned (1) whether the modified "yes" vote result statement wrongly implied that satisfying the conditions in the proposed measure "would be simple or routine"; and (2) whether the modified statement was sufficiently specific in describing the objective of the employee's written authorization: a payroll deduction for political spending. *Id.* Petitioners do not raise those claims here. We note that the approved modified "yes" vote result statement in *Nesbitt II* used the phrase "entities receiving payroll deductions," not the sole term "recipients," to describe the entities that the proposed measure would regulate. *Id.* The court did not address whether substituting the term "recipient" also might have adequately served that purpose.

The petitioner in *Nesbitt II* also contended, in connection with a challenge to the modified caption, that the Attorney General should use the phrase "organizations receiving money by payroll deduction" rather than "entities receiving payroll deductions," to describe the entities that the proposed measure would affect. This court disagreed, because it concluded that the average voter would read those phrases as having equivalent meanings. *Id.* at 428. Again,

this court's discussion did not address or decide whether the sole term "recipient" adequately would describe the regulatory targets of the proposed measure.

For the reasons discussed above, we conclude that the Attorney Generals's "yes" vote result statement does not comply substantially with ORS 250.035(2)(b). We therefore refer the "yes" vote result statement to the Attorney General for modification. The Attorney General may consider on referral petitioner's separate claim that the "yes" vote result statement should make clear that the employee must authorize the payroll deduction annually and in writing.

■      The "no" vote result statement in a ballot title must be a "simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). Petitioners contend that the Attorney General's "no" vote result statement fails to describe accurately the result of a "no" vote because it supplies no information to voters about the state of affairs that will exist if voters reject the proposed measure. Instead, according to petitioners, the "no" vote result statement recites only that Oregon law will not contain the restrictions on the use of payroll-deducted money that the proposed measure would impose. Petitioners also assert that the "no" vote result statement must state that, under current law, unions have no authority to compel individuals to make political contributions. We address those arguments in order.

This court has discussed previously the problem that arises if the "no" vote result statement attempts to describe the current state of the law that will continue if voters reject the proposed measure by reciting, in effect, that the law will not reflect the policy choices that the proposed measure embodies. In *Kain v. Myers*, 335 Or 228, 234, 64 P3d 1129 (2003), for example, the Attorney General's "no" vote result statement provided:

" 'Result of "No" Vote:   "No" vote retains current law, rejects proposed prohibition against receiving public employee payroll-deducted money, for organizations using such money for "political purposes" (as defined).' "

The petitioners argued that the statement mentioned "current law" but that that reference was devoid of content and required an explanation. This court agreed:

> "We agree with petitioners that, however justified a reference to 'current law' might be in other ballot titles, the phrase in question has no substance in the context of the present proceeding. Including the reference does not 'describe[ ] the result if the state measure is rejected.'

> "Petitioners further argue that the Attorney General's 'no' vote result statement is not 'simple and understandable,' as the statute commands, but is, instead, 'extremely difficult to understand.' We agree with petitioners that the statement is not understandable, because it provides no new information to the reader. Instead, it simply attaches the word 'rejects' to the same summary of the proposed measure that appeared in the 'yes' vote result statement. That is, the substantive message of the Attorney General's 'no' vote result statement is that 'no' rejects 'yes.' That is not a sufficient explanation to meet the requirement of ORS 250.035(2)(c). We hold that the Attorney General's 'no' vote result statement fails substantially to comply with the requirement of ORS 250.035(2)(c). On referral, the Attorney General shall modify it."

*Id.* at 234-35.

In *Nesbitt I*, the Attorney General certified a "no" vote result statement that provided:

> " 'Result of "No" Vote:   "No" vote retains, without modification, current provisions governing payroll deductions; rejects proposed limitations on collection, use, and commingling of payroll deductions for "political purposes" (defined).' "

335 Or at 225. In sustaining a challenge similar to that discussed above in *Kain*, this court stated:

> "[T]he part of the 'no' vote result statement after the semicolon simply parallels a part of the wording of the 'yes' vote result statement, preceded by the word 'rejects.' "

*Id.* at 226.

In *Nesbitt II*, the Attorney General, in response to *Nesbitt I*, certified the following modified "no" vote result statement:

" 'RESULT OF "NO" VOTE:   "No" vote rejects requirement that entities receiving payroll deductions obtain employee's authorization and comply with additional limitations before using payroll deductions for "political purposes" (defined).' "

335 Or at 430. On review, the Attorney General acknowledged that he again had employed the "no rejects yes" formulation that this court had rejected in *Kain* and *Nesbitt I*. However, he defended that approach as a permissible one, " 'even if that means the "no" vote result statement provides little or no new information.' " *Id.* at 432. This court interpreted the Attorney General's argument as a invitation to overrule *Kain* and rejected it. *Id.* The court stated:

"[A]s this court explained in *Kain*, a statement that says no more than that ' "no" rejects "yes" ' does not much advance any voter's understanding of the choice that a proposed measure represents. Certainly, before resorting to the ' "no" rejects "yes" ' statement as a default position, the Attorney General needs to be reasonably satisfied that he cannot compose other possible formulations of the 'no' vote result statement that will provide the voter with a greater amount of information. In this case, he has not persuaded us that that is true.

"* * * * *

"The function of the 'no' vote result statement is to provide a voter with a 'simple and understandable statement of not more than 25 words *that describes the result if the state measure is rejected*.' ORS 250.035(2)(c) (emphasis added). That emphasized wording, examined in light of the contrasting information that ORS 250.035(2)(b) requires in a 'yes' vote result statement, in our view, states an expectation that, when possible, the 'no' vote result statement will provide information that should assist the voter to understand the state of affairs that will exist if the voters reject the proposed measure. It is no news to a voter that voting 'no' means 'not yes.' Thus, although simple parallelism may fulfill the emphasized statutory goal in the abstract, it will do so only mindlessly in many cases."

*Id.* at 432-33 (emphasis in original).

The Attorney General argues that his "no" statement in this case does not simply insert the word "rejects" before the "yes" statement. That is true. Petitioners argue, however, that the Attorney General's chosen phrase— "*retains current law not restricting* recipient's use of authorized payroll deduction money" (emphasis added)—achieves the same effect by purporting to describe what current law does not contain, rather than what it does contain.

We disagree. The Attorney General's introductory phrasing ("retains current law not restricting") in this context purports to describe present law; it does not simply describe the result of a "no" vote as a rejection of the policy changes that the proposed measure would enact. That fact distinguishes this case from the holdings reviewed above in *Kain*, *Nesbitt I*, and *Nesbitt II*. The words "not restricting" convey substantially the same message that petitioners prefer, *i.e.*, that current law *allows* the use of certain funds. We cannot say, of course, that any sort of reference to current law in a "no" statement will satisfy wholly the statutory policy promoting voter understanding of "the state of affairs that will exist if the voters reject the proposed measure[,]" as this court discussed in *Nesbitt II*, 335 Or at 433. We agree, however, with the Attorney General that, in this context, the "no" statement does not simply recite that a "no" vote would reject the result of a "yes" vote.

■     Petitioners also argue that the Attorney General's "no" statement fails to inform voters that "current law allows organizations to spend and manage money collected through payroll deductions in the same manner as other money." They rely on *Towers v. Myers*, 338 Or 542, 112 P3d 1184 (2005), in support of that argument.

In *Towers*, this court sustained a challenge to the following statement in a ballot title summary: "[c]urrent law neither limits use of public employees' payroll deductions nor requires segregating deductions earmarked for political purposes." *Id.* at 546. This court noted that the "no" vote result statement contained the same erroneous message, that is, the "no" vote result statement provided that a " 'No' vote

retains current law, which neither limits uses to which payroll deductions may be put nor requires segregating payroll deductions earmarked for political purposes." *Id.* at 545, 547 n 2. This court agreed that those statements of law were inaccurate because "Federal First Amendment jurisprudence limits the power to impose such deductions and imposes significant procedural requirements respecting the process." *Id.* at 546 (citing federal cases).

According to petitioners, when individuals and organizations acquire money through a payroll deduction process, current law allows them to manage and spend it in the same way that they manage and spend other money in their possession. They assert that the Attorney General's "no" statement relies on an irrelevant, and ultimately confusing, comparison between payroll deducted funds collected with employee authorization and those collected without that authorization. The Attorney General disagrees, pointing out that *Towers* confirmed that current law imposes various procedural limitations on the collection and use of "fair share" fees over the employee's objection. The Attorney General also contends that voters "will understand that the term 'authorized payroll deduction' does not include an imposed 'fair share' contribution used, over the employee's objection, for political purposes."

It is doubtful that the word "authorized" will carry all the freight that the Attorney General places on it. The nuances that the Attorney General derives from that word in this context likely will escape most voters. It is also true, as petitioners argue, that the substance of the proposed measure concerns the use of all payroll-deducted funds by all individuals and organizations that receive them, not only "fair share" fees received by labor organizations. Nonetheless, we are satisfied that the inclusion of the term "authorized" properly identifies the relevant funds as those deducted in compliance with applicable laws.[3]

---

[3] The Attorney General may choose to alter the wording of the "no" vote result statement because of other changes that he will make on referral to other parts of the ballot title. *See Towers v. Myers*, 338 Or 542, 547 n 2, 112 P3d 1184 (2005) (recognizing that authority).

■  Finally, petitioners correctly identify an aspect of the status quo that the "no" vote result statement fails to address: the inability of labor organizations to compel employees to make political contributions. The Attorney General chose to address another feature of current law that a "no" vote would retain: the absence of a requirement for a separate accounting of funds used for a political purpose. Petitioners do not challenge the accuracy of the Attorney General's description of that point; rather, they strongly prefer that he address their issue instead, calling it "essential" voter information.

The Attorney General permissibly could have elected to state the point that petitioners advocate, but his choice to focus on another significant feature of current law also is a permissible one. The Attorney General's "no" vote result statement complies substantially with statutory requirements.

Lastly, petitioners challenge four aspects of the Attorney General's summary. A ballot title must contain a summary that is a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." ORS 250.035(2)(d). We have addressed and rejected the substance of two of petitioners' challenges in our discussion above of the "no" vote result statement. We also reject those arguments in this context without further discussion.

■  Petitioners argue that "the description of what constitutes a 'political purpose' is extremely confusing, rendering the statement deficient." They assert that the confusion stems from the omission of important terms that are necessary to make the summary both readable and accurate. They draw attention to the following passage of the summary:

> " 'Political purpose' includes: candidate, political committee, political party, supporting or opposing candidate or ballot measure, including efforts to gather or to discourage signatures for proposed measure or petition; excludes most lobbying."

The Attorney General disagrees with petitioners' reading of the proposed measure but asserts that, if his reading seems

confusing, the confusion "is attributable to the language of the measure itself, not the summary."

Petitioners' challenge is well-taken. The measure deems money to be "used for a political purpose" if the person, company, or organization that possesses the money *contributes* the money to a specified entity (*i.e.*, "a candidate or political committee or party") or *spends* the money for a particular objective (*i.e.*, supporting or opposing a candidate or a ballot measure, including efforts supporting or opposing the gathering of signatures on initiative petitions). By leaving out terminology that refers to the key elements of contribution and expenditure, the summary wrongly states that the listed political entities, "candidate, political committee, political party," are themselves a "political purpose." That deficiency also affects the accuracy of the reference to "supporting or opposing candidate or ballot measure * * *." The proposed measure, as relevant here, regulates the contribution or expenditure of money; it does not reach other forms of supporting or opposing candidates or ballot measures. The Attorney General's phrasing does not reflect that important distinction. We refer the summary to the Attorney General to address those deficiencies.

■        Petitioners also challenge the use of the modifier "most" before the term "lobbying" at the end of the passage of the summary quoted above. That objection refers to the following passage of the proposed measure:

"(b)    For purposes of this section, money spent lobbying an elected official shall not be deemed used for a political purpose. So as to prevent political campaigning under the guise of 'lobbying,' money spent on or contributed to any direct mail, print, or electronic media or other campaign, which names or otherwise identifies a person who is a candidate for public office in an election to be held within 90 days of the communication, shall be deemed used for a political purpose."

According to that text, the proposed measure would create an exception from its requirements for "lobbying" an elected official, but then declares that certain identified contributions and expenditures of money within the described 90-day period, which could included lobbying activities, are deemed

to be for a political purpose and are not within the exception for lobbying.

Petitioners contend that the Attorney General can only speculate about the extent of lobbying activities that will fall under both the exception and the 90-day provision. They agree that the proposed measure excludes *some* lobbying activities, but contend that the Attorney General cannot *accurately* state that the proposed measure excepts "most" lobbying without resorting to pure guesswork.

■    Petitioners' general proposition is undeniably correct: the summary must summarize the measure and its major effects, not guess about them. The voters require information, not speculation, to "understand *what will happen* if the measure is approved * * *." *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989) (emphasis added).

The Attorney General responds by noting that the proposed measure exempts *all* lobbying of an elected official but removes from the lobbying exemption certain campaign activities occurring 90 days before an election. He explains that the 90-day provision is a recognition that the term "lobbying" potentially is ambiguous and, for that reason, the use of the term "most" in the phrase "most lobbying" is justified.

In our view, the answer is unresponsive to petitioners' challenge. The term "most" in the phrase "most lobbying" creates the inference that the exemption applies to the greatest part, in quantity, extent, or degree, of all lobbying activities. However, the text of the proposed measure does not support use of a term that incorporates such a quantitative judgment. For example, 90 days may seem to be a brief temporal limit on the described campaign expenditures and contributions, but the timing of those activities—*90 days before a candidate's election*—can critically affect the outcome of the election. Stating to the voters that "most" lobbying occurs outside that 90-day period necessarily involves speculation. Only a different term, such as "some" or "certain," will describe the lobbying exemption accurately. We refer the summary to the Attorney General to address that problem.

We refer the certified ballot title to the Attorney General for modification. In the instances noted above, the ballot title fails to comply with statutory requirements. ORS 250.035(2).

Ballot title referred to Attorney General for modification.